IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNA PAWELCZAK, an individual; on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 11-cv-3700 |
| v. | ) ) | Hon. Charles P. Kocoras |
| NATIONS RECOVERY CENTER, INC., a Georgia Corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Nations Recovery Center, Inc. ("NRC") has moved for summary judgment on Plaintiff Anna Pawelczak's claims brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). NRC's motion should be denied because both the "live" and prerecorded voice messages left for Plaintiff uniformly failed to disclose that they were from a debt collector and often failed to disclose that they were from NRC, in violation 15 U.S.C. §§ 1692d(6) and e(11). Further NRC's bona fide defense is without merit.

**FACTS**

Between December 11, 2010 and March 29, 2011, NRC called and left "live" and prerecorded voice messages for Plaintiff to collect a debt owed to Applied Bank. (Plaintiff's (1) Response to Defendant's Rule 56.1 Statement of Material Facts and (2) Additional Material Facts ("Plaintiff's Facts"), ¶ 31.) The Applied Bank debt arose from transactions entered into for personal, family, and household purposes. (Plaintiff's Facts, ¶ 32.) All of the "live" and prerecorded message left by NRC for Plaintiff violated the FDCPA. (Plaintiff's Facts, ¶¶ 33, 35-36, 38, 40, 42, 44, 46, 48.)

NRC left thirteen prerecorded voice messages for Plaintiff. The prerecorded voice messages stated as follows:

> "Important message for Anna Pawelczak. If this is Anna Pawelczak press the one key on your phone now and you will be connected to the next available agent. Again, if this is Anna Pawelczak press one to be connected, otherwise disregard this call or contact us 1-866-363-3765 to remove this number. Thank you."

(Plaintiff's Facts, ¶ 48.)

NRC also left eight "live" voice messages for Plaintiff, *i.e.*, voice messages delivered by a human being. On December 11, 2010, the "live" message left on Plaintiff's home telephone voicemail stated:

> "Hi this message is intended to you Anna . . . Anna . . . Pawelczak to return this call here in my office. I do need to speak to you directly in concern of this matter that has been filed here. Prior to a decision being rendered without your input. When responding, my callback number listed is now 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 33.) The December 11, 2010 message was left by a collector known to NRC as "shekeriat". (Plaintiff's Facts, ¶ 34.) Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

On December 21, 2010, the "live" message left on Plaintiff's home telephone voicemail stated:

> "Hi this is an attempt to reach you Anna. Anna Pawelczak to return this call here in my office. Need a call back from you in regards to this matter that is still pending here. I can be reached at 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 35.) Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

1

On December 31, 2010 , the "live" message left on Plaintiff's home telephone voicemail stated:

> "This message is for Miss Anna. Miss Anna would you give Mr. Davenport a call please, at Nations Recovery Center? My phone number is 1-800-935-1139, extension 2119. We have a reference number - 2630957. Thank you ma'am."

(Plaintiff's Facts, ¶ 36.) The December 31, 2010 message was left by a collector known to NRC as "gina". (Plaintiff's Facts, ¶ 37.)

On January 4, 2011, the "live" message left on Plaintiff's home telephone voicemail stated:

> "Hi this message intended for you Anna Pawelczak. Anna Pawelczak to return this call here in my office. Do need to hear back from you in concern on this matter that has been filed here. The information pending is time sensitive with pursuant to Federal Article 95-109. My direct number is 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 38.) The January 4, 2011 message was left by a collector known to NRC as "shekeriat". (Plaintiff's Facts, ¶ 39.) Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

On January 14, 2011, the "live" message left on Plaintiff's home telephone voicemail stated:

> "This message is intended for Anna. Anna . . . Ann . . . Ann this is Sylvester Johnson contacting you from Nations Recovery Center. It's important that you reach my office today. We got a toll-free number of 1–800-935-1139, my extension is 2136. Ct me as soon as possible today."

(Plaintiff's Facts, ¶ 40.) The January 14, 2011 message was left by a collector known to NRC as "Sylvester". (Plaintiff's Facts, ¶ 41.)

2

On January 18, 2011, the "live" message left on Plaintiff's home telephone voicemail stated:

> "This message is intended for Anna. Anna this is Sylvester Johnson, I'm calling you from Nations Recovery Center, Anna it is important that you reach my office today. Got a toll-free number1-800-935-1139, my extension is 2136."

(Plaintiff's Facts, ¶ 42.) The January 18, 2011 message was left by a collector known to NRC as "Sylvester". (Plaintiff's Facts, ¶ 43.)

On January 20, 2011, the "live" message left on Plaintiff's home telephone voicemail stated:

> "Yes hi Annie, Anna, this is Sylvester Johnson calling you from Nations Recovery Center. Um, left several attempts on trying to reach you in reference to the situation pending against you in my office with Applied Banking. I need you to contact me as soon as possible today. Got a toll-free number of 800-935-1139 my extension is 2136."

(Plaintiff's Facts, ¶ 44.) The January 20, 2011 message was left by a collector known to NRC as "Sylvester". (Plaintiff's Facts, ¶ 45.)

On February 23, 2011, the "live" message left on Plaintiff's home telephone voicemail stated:

> "Hello this message is for Anna Pawelczak. This is Mr. [unintelligible] calling from Nations Recovery Center. Please return my call at this toll free number. 800-935-1139 x 2010. Refer to file number 2630957. I'm calling about this file here in my office Anna, against your name. This is in regards to Applied Bank, your old Visa credit card. Now we made several documented attempts to contact you and you haven't responded. I need a call back immediately upon receiving this message. Now we do have several, uh, attractive programs during this tax season that may suit your needs. So Anna feel free to give me a call back. Once again the number is 800-935-1139, extension 2010."

(Plaintiff's Facts, ¶ 46.) The January 14, 2011 message was left by a collector known to

3

NRC as "kewanee". (Plaintiff's Facts, ¶ 47.)

In discovery, Plaintiff asked NRC to produce all documents "used as training materials, operations manuals, stand operating procedures, policies or practices" relating to NRC's collectors communications with consumers, including "instructions given to Collectors concerning the content of Voice Voice messages." (Plaintiff's Facts, ¶ 49, p. 4, par. 10.) NRC produced 34 pages of documents in response to this production request. (Plaintiff's Facts, ¶ 50.)

Of the 34 pages produced by NRC, 26 pages consist of outdated training materials. The version of the FDCPA used by NRC to train its collectors is not current; it is a version that precedes the 2006 amendments to the Act. (Plaintiff's Facts, ¶ 51.) A worksheet used to train NRC's collectors has a copyright date of 1998 and has no questions relating to leaving voicemail voice messages for debtors. (Plaintiff's Facts, ¶ 52.) Similarly, a test to assess comprehension of the FDCPA contains no questions relating to leaving voicemail voice messages for debtors. (Plaintiff's Facts, ¶ 53.)

Six pages produced by NRC in response to Plaintiff's production request relate to the fines and discipline that collectors can expect if they violate the FDCPA. (Plaintiff's Facts, ¶54.) These six pages do not instruct collectors in how to leave FDCPA-compliant voice messages for consumers.

NRC produced two half-page documents which contain information about complying with the FDCPA. One of the documents, dated April 1, 2011, pertains to disclosures that should be given in initial telephone *conversations* with consumers. It contains no information about leaving FDCPA-compliant voicemail voice messages. (Plaintiff's Facts, ¶ 55.) The other half-page document, dated January 28, 2011, is primarily focused on the disclosures that should be made in any conversation, not just initial telephone conversations, with consumers. (Plaintiff's

4

Facts, ¶ 56.) Importantly, as of January 28, 2011, Plaintiff had already received six "live" voice messages from NRC and one prerecorded message. (Plaintiff's facts, ¶¶ 33-44, 48.) One NRC collector does not even remember if it was her practice to leave compliant telephone messages during this time period. (Plaintiff's Facts, ¶ 73.)

NRC does not require its collectors to read from a script when leaving a "live" voice message. (Plaintiff's Facts, ¶ 59.) New policy memoranda, rather than a copy being given to each collector for reference, are posted on bulletin boards in each collection area. (Plaintiff's Facts, ¶ 60.) NRC collectors are not required to preserve these memos in any way and some simply throw them in the garbage. (Plaintiff's Facts, ¶ 70-72.)

## ARGUMENT

**I.     STANDARD OF DECISION**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Cedillo v. Int'l Assoc. of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir, 1979). The substantive law of the issues raised by the claims asserted in the complaint determines what is "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). By these standards, NRC's motion for summary judgment should be denied.

## II. DEFENDANT'S "LIVE" VOICE MESSAGES VIOLATED THE FDCPA

### A. Defendant's "Live" Voice messages Violated §§ 1692d(6) and e(11)

Defendant's voice messages violated §§ 1692d(6) and e(11) of the FDCPA which provide as follows:

> **15 U.S.C. § 1692d. Harassment or abuse**
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (6) Except as provided in section 804 [1692b], the placement of telephone calls without meaningful disclosure of the caller's identity.
>
> **15 U.S.C. §1692e. False or misleading misrepresentations**
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general condition of the foregoing, the following conduct is a violation of this section:
> . . . .
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

Defendant's voice messages failed (1) to meaningfully disclose the caller's identity, and (2) to disclose that the communication was from a debt collector. Further, Defendant's initial message to Plaintiff failed to disclose that NRC was "attempting to collect a debt and that any information obtained will be used for that purpose."

NRC left eight "live" voice messages for Plaintiff, each of which violated §§ 1692d(6) and e(11). The first "live" message, which was the initial oral communication with Plaintiff, stated:

6

> "Hi this message is intended to you Anna . . . Anna . . . Pawelczak to return this call here in my office. I do need to speak to you directly in concern of this matter that has been filed here. Prior to a decision being rendered without your input. When responding, my callback number listed is now 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 33.) This message, in violation of § 1692e(11) fails to disclose that NRC was "attempting to collect a debt and that any information obtained will be used for that purpose." Further, the message fails to "meaningfully disclose the caller's identity in violation of § 1692d(6). Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

The next "live" message, left on December 21, 2010, stated:

> "Hi this is an attempt to reach you Anna. Anna Pawelczak to return this call here in my office. Need a call back from you in regards to this matter that is still pending here. I can be reached at 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 35.) This message failed to meaningfully disclose the caller's identity and that the call was from a debt collector. Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

On December 31, 2010, the "live" message stated:

> "This message is for Miss Anna. Miss Anna would you give Mr. Davenport a call please, at Nations Recovery Center? My phone number is 1-800-935-1139, extension 2119. We have a reference number- 2630957. Thank you ma'am."

(Plaintiff's Facts, ¶ 35.) Here, there was no disclosure that the call was from a debt collector and the subject of the call was the collection of a debt.

7

The next "live" message, left on January 4, 2011, stated:

> "Hi this message intended for you Anna Pawelczak. Anna Pawelczak to return this call here in my office. Do need to hear back from you in concern on this matter that has been filed here. The information pending is time sensitive with pursuant to Federal Article 95-109. My direct number is 1-800-935-1139 at extension 2074."

(Plaintiff's Facts, ¶ 38.) This message failed to meaningfully disclose the caller's identity and that the call was from a debt collector. Defendant concedes that this message (1) does not identify Nation's Recovery Center, (2) does not indicate that it is a call from a collection agency, or (3) that the subject of the call is debt collection. (Plaintiff's Facts ¶ 57.)

The next three "live" voice messages, left on January 14, 18, 20, 2011, stated:

> "This message is intended for Anna. Anna . . . Ann . . . Ann this is Sylvester Johnson contacting you from Nations Recovery Center. It's important that you reach my office today. We got a toll-free number of 1–800-935-1139, my extension is 2136. Ct me as soon as possible today."

> "This message is intended for Anna. Anna this is Sylvester Johnson, I'm calling you from Nations Recovery Center, Anna it is important that you reach my office today. Got a toll-free number1-800-935-1139, my extension is 2136."

> "Yes hi Annie, Anna, this is Sylvester Johnson calling you from Nations Recovery Center. Um, left several attempts on trying to reach you in reference to the situation pending against you in my office with Applied Banking. I need you to contact me as soon as possible today. Got a toll-free number of 800-935-1139 my extension is 2136."

(Plaintiff's Facts, ¶¶ 40, 42, 44.) These voice messages failed to disclose that the calls were from a debt collector and the subject of the call was the collection of a debt.

Finally, the last "live" message, left February 23, 2011, stated:

> "Hello this message is for Anna Pawelczak. This is Mr. [unintelligible] calling from Nations Recovery Center. Please return my call at this toll free number. 800-935-1139 x 2010. Refer to file number 2630957. I'm calling about this file here in my

8

> office Anna, against your name. This is in regards to Applied Bank, your old Visa credit card. Now we made several documented attempts to contact you and you haven't responded. I need a call back immediately upon receiving this message. Now we do have several, uh, attractive programs during this tax season that may suit your needs. So Anna feel free to give me a call back. Once again the number is 800-935-1139, extension 2010."

(Plaintiff's Facts, ¶ 46.) Defendant's name was disclosed but the message does not explicitly state that the call is from a debt collector of that the subject of the call is debt collection.

All of the voice messages quoted above violate §§ 1692e(11); the first three also plainly violate § 1692d(6). *Smith v. Greystone Alliance, LLC*, 2011 U.S. Dist. LEXIS 35283, *14-23 (holding debt collector had violated § 1692e(11) when it failed to identify itself as a debt collector after the initial communication with the consumer); *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005) (holding that debt collector had violated § 1692d(6) when it failed to identify itself by name.) NRC does not attempt to argue that these voice messages are compliant with the FDCPA, arguing instead that it should be exempt from liability due to its asserted bona fide error defense.

### B. NRC Has Not Proven Its Bona Fide Error Defense With Respect To Its "Live" Voice messages

NRC fails to prove that its "live" voice messages are entitled to the bona fide error defense. The bona fide error defense requires NRC to prove three elements: that its "violations" of §§ 1692d(6) and e(11) (1) were unintentional, (2) were the result of a bona fide error, and (3) occurred notwithstanding the existence of procedures reasonably adapted to avoid such error. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 803 (7th Cir. 2009). To meet the "reasonable procedures" prong of the defense, a debt collector must prove two things: "first, whether the debt collector 'maintained'--i.e., actually employed or implemented--procedures to avoid errors; and,

9

second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006). NRC fails to prove that its procedures are reasonably adapted to prevent non-FDCPA compliant "live" voice messages from being left with consumers.

NRC argues that it gives its collectors lots of training in the FDCPA in general, and leaving voice messages in particular. However, of the 34 pages produced by NRC in response to Plaintiff's request for materials it uses to train its collectors in leaving voice messages, 26 pages consist of outdated training materials. The version of the Fair Debt Collection Practices Act used by NRC to train its collectors is not current; it is a version that precedes the 2006 amendments to the Act. (Plaintiff's Facts, ¶ 51.) A worksheet used to train NRC's collectors has a copyright date of 1998 and has no questions relating to leaving voicemail voice messages for debtors. (Plaintiff's Facts, ¶ 52.) Similarly, a test to assess a collector's comprehension of the FDCPA contains no questions relating to leaving voicemail voice messages for debtors. (Plaintiff's Facts, ¶ 53.)

Six pages produced by NRC in response to Plaintiff's production request relate to the fines and discipline that collectors can expect if they violate the FDCPA. (Plaintiff's Facts, ¶54.) These six pages do not instruct collectors in how to leave FDCPA-compliant voice messages for consumers. In fact, most of NRC's collectors remember little if anything concerning their initial training concerning. (Plaintiff's Facts, ¶¶ 62-70.)

NRC also produced an April 1, 2011 "Policy Statement" that pertains to disclosures that <u>should</u> be given in *initial telephone conversations* with consumers. Nothing in the April 1, 2011 Policy Statement relates to leaving FDCPA-compliant voicemail voice messages. (Plaintiff's Facts, ¶ 55.)

Finally, NRC produced a single half-page memorandum, dated January 28, 2011, the focus of which is giving the proper disclosures in *any conversation* with a consumer. The subject of the document is "Mini Miranda" and the document's first sentence states in bold: "**The mini Miranda must be used during all conversations with debtors.**" The document alludes to leaving FDCPA-compliant voice messages but the emphasis of the memorandum is on *conversations* with consumers. (Plaintiff's Facts ¶ 56.) By January 28, 2011, the date of the memorandum, Plaintiff had already received six "live" voice messages from NRC and one prerecorded message. (Plaintiff's facts, ¶¶ 33-44, 48.)

All in all, NRC's document production suggests that NRC's training of its collectors with respect to leaving FDCPA-compliant voice messages is highly inadequate. Further, to avoid leaving "live" voice messages that violate the FDCPA, NRC could require its collectors to read from a script when leaving a message. But NRC neither requires its collectors to read from a script, nor does it provide them with suggested messages or scripts. (Plaintiff's Facts, ¶¶ 59, 62-69.) Also, when new policy memoranda are issued relating to compliance with the FDCPA, NRC could give a copy to each collector to refer to as needed. Instead, new policy memoranda are posted on bulletin boards in each collection area and otherwise thrown in the garbage by NRC collectors. (Plaintiff's Facts, ¶¶ 60, 71-72.)

Not surprisingly, in light of the training given its collectors, *all* of the "live" and prerecorded message left by NRC for Plaintiff violated the FDCPA. (Plaintiff's Facts, ¶¶ 33, 35-36, 38, 40, 42, 44, 46, 48.) The "live messages, moreover, were not the work of a single, rogue collector. *Four* different collectors left non-compliant "live" voice messages for Plaintiff. (Plaintiff's Facts, ¶¶ 34, 37, 39, 41, 43, 45, 47.). Stated another way, 100% of NRC's failed to comply with its own alleged written policy and the FDCPA.

NRC has failed to prove that it has "procedures that are 'reasonably adapted' to avoid the specific error at issue." *Johnson*, 443 F.3d at 729; *see also Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1275 (11th Cir. 2011) (debt collector's procedures were not reasonably adapted to prevent the violation claimed). Accordingly, NRC's motion for summary judgment should be denied.

### III.  NRC'S PRERECORDED VOICE MESSAGES VIOLATED THE FDCPA

#### A.  Defendant's Prerecorded Voice messages Violated §§ 1692d(6) and e(11)

As with its "live" voice messages, NRC prerecorded voice messages violated §§ 1692d(6) and e(11) of the FDCPA. NRC left the same prerecorded message in Plaintiff's voicemail on thirteen occasions:

> "Important message for Anna Pawelczak. If this is Anna Pawelczak press the one key on your phone now and you will be connected to the next available agent. Again, if this is Anna Pawelczak press one to be connected, otherwise disregard this call or contact us 1-866-363-3765 to remove this number. Thank you."

The prerecorded voice messages violate §§ 1692d(6) and e(11) because they fail to (1) meaningfully disclose the caller's identity, and (2) state that the communication was from a debt collector. *Smith*, 2011 U.S. Dist. LEXIS 35283, at *14-23; *Hosseinzadeh*, 387 F. Supp. 2d at 1112.

NRC argues (Memorandum, p. 6) that its prerecorded voice messages were not delivered to Plaintiff's voice mailbox. Rather, NRC argues, Plaintiff received the calls, did not press the one key, and then recorded the voice messages instead. Had Plaintiff pressed the one key, NRC argues, she would have been connected to a NRC collector who would have given her the FDCPA-compliant disclosures. According to NRC, Plaintiff's "choice to remain silent and not self-identify herself [by pressing the one key] cannot be used to manufacture a FDCPA claim"

12

There is no factual basis for NRC's argument. Plaintiff has stated under oath that NRC's voice messages were left on Plaintiff's home telephone voicemail system." (Plaintiff's Facts, ¶¶ 48, 78-83.) The only "fact" which NRC proffers to rebut Plaintiff's sworn statement is the testimony of its Fed. R. Civ. P. 30(b)(6) witness, Paul Bataillon, with respect to the known error rate of its automated telephone dialing system, Dial Connect. According to NRC, the Dial Connect system is supposed to hang up if an answering device, rather than a live person, answers the call. However, NRC admits that Dial Connect is not perfect as the system does not always correctly detect when a live person has answered the call and, as in the thirteen voice messages left for Plaintiff, the system does leave voice messages on answering devices.

When Bataillon was asked at his deposition how often the system leaves a message in error, he made it clear that he had no personal knowledge on the subject, except to admit that the system has an error rate:

Q. Do you know if there is an error rate which is known by NRC or Dial Connect? What I mean is, are you aware of, you know, statistics that have been done to determine the number of times that the dialer will be fooled?

A. I believe there are some statistics. If memory serves me, I was told, but this has been a while ago, it was 98, 99 percent effective. But I am not positive on this point. It's been a little while.

(Plaintiff's Facts, ¶ 58.) This answer plainly relies on hearsay. Further, Bataillon makes it clear he is not even sure whether he is remembers correctly what some unknown person told him some unknown time ago about the systems' unknown, unverifiable, error rate. Defendant admits the system has an instruction manual, but decline to produce it in discovery or in support of its own motion. (Plaintiff's Facts, ¶76.)

NRC argues that its prerecorded voice messages could not have been left on Plaintiff's home voicemail system because the Dial Connect system as a 98-99% error rate. But Bataillon's

unreliable hearsay answer as to the Dial Connect system's error rate is not sufficient to refute Plaintiff's sworn testimony that NRC's prerecorded voice messages were left on her home telephone voicemail system.

> **B.** **NRC Has Not Proven Its Bona Fide Error Defense With Respect To Its "Live" Voice messages**

NRC argues (Memorandum, pp. 5-7) that its prerecorded voice messages are intentionally designed to be vague about who is calling in order to avoid disclosing information about the debt to a person other than the debtor in violation of § 1692c(b) of the FDCPA. But numerous courts have rejected that argument as an excuse for violating the disclosure requirements of §§ 1692d(6) and e(11). *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) ("Just as it is not reasonable to destroy a village in order to save it, neither is it reasonable to violate an Act in order to comply with it."); *Smith*, 2011 U.S. Dist. LEXIS 35283, at *25 ("Because Greystone's actual policy explicitly directs collectors to withhold information required by § 1692e(11), its error cannot be unintentional; nor can its policies be designed to prevent such errors.") Accordingly, NRC has not met its burden of showing that its prerecorded voice messages were unintentional.

NRC also argues (Memorandum, p. 11) that the "high accuracy" of the Dial Connect system demonstrates that it has procedures in place to avoid errors. But the only concrete evidence on this question indicates that the Dial Connect system unreliable and is *not* highly accurate. Plaintiff's testimony is that the so-called highly accurate Dial Connect system left thirteen prerecorded messages for Plaintiff. (Plaintiff's Facts ¶ ¶ 48, 78-83.) In contrast, NRC has provided testimony about how the Dial Connect system is *supposed* to work despite its business relationship with the company who built and supports the system. There is no evidence

14

about how accurate the system is in practice. Bataillon's unsupported, unreliable testimony, based on hearsay, about the Dial Connect system's error rate is wholly speculative, and not sufficient to rebut Plaintiff's testimony showing that the Dial Connect system is *not* highly accurate.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges the Court to deny Defendant's motion for summary judgment.

DATED: May 15, 2012 Respectfully submitted,

*s/ William F. Horn*
William F. Horn
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile: (866) 596-9003
E-Mail: bill@wfhlegal.com

*One of the Attorneys for Plaintiffs, Anna Pawelczak and all others similarly situated*

## **CERTIFICATE OF SERVICE**

I, William F. Horn, hereby certify that on May 15, 2012, I caused to be filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will send notification of such filing via electronic mail to the following parties:

David M. Schultz, Esq.
Corinne Cantwell Heggie, Esq.
Nabil G. Foster, Esq.
Nicholas D. O'Conner
HINSHAW & CULBERTSON, LLP
222 N. LaSalle St., Suite 300
Chicago, IL 60601
Fax: (312) 704-3001
dschultz@hinshawlaw.com
cheggie@hinshawlaw.com
nfoster@hinshawlaw.com
noconner@hinshawlaw.com

*Attorneys for Defendant, Nations Recovery Center, Inc.*

*s/ William F. Horn*
William F. Horn
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone:   (718) 785-0543
Facsimile:   (866) 596-9003
E-Mail:   bill@wfhlegal.com

*One of the Attorneys for Plaintiffs, Anna Pawelczak, and all others similarly situated*