UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNA PAWELCZAK, an individual; on )
behalf of herself and all others similarly )
situated, )
          )
          Plaintiff, )
          )
    vs. )         11 C 3700
          )
NATIONS RECOVERY CENTER, INC., )
a Georgia corporation, )
          )
          Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Plaintiff Anna Pawelczak's ("Pawelczak") and Defendant Nations Recovery Center, Inc.'s ("NRC") cross-motions for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, Pawelczak's motion for summary judgment as to liability is granted, and NRC's motion for summary judgment is denied.

## BACKGROUND[1]

Pawelczak filed this action against NRC for alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act") 15 U.S.C. § 1692, *et seq*. Pawelczak

---

[1] Unless otherwise noted, the following facts are undisputed for purposes of summary judgment. Further, all supported statements in Pawelczak's and NRC's respective statements of undisputed facts are deemed admitted where the opposing party failed to state a valid evidentiary objection or purportedly disputed the statement without citing any supporting material. *See* N.D. Ill. L.R. 56.1(b)(3)(B)-(C).

alleges that NRC left several messages on her voice mail system, and that NRC failed to provide necessary disclosures in those messages under 15 U.S.C. §§ 1692d(6) and 1692e(11).

*NRC's Phone Calls to Pawelczak*

Sometime prior to December 11, 2010, Pawelczak, a resident of Mount Prospect, Illinois, defaulted on a financial obligation owed to Applied Bank, a creditor. The obligation was for personal, family, or household purposes. NRC, a debt collector headquartered in Georgia that does business in Illinois, eventually obtained rights to collect on Pawelczak's debt.

NRC contacts its debtors in two ways: "live calls" placed by NRC employees, and automated calls placed through Dial Connect, a system that contacts debtors with pre-recorded messages ("recorded calls"). Between December 11, 2010 and March 29, 2011, NRC called and left Pawelczak 21 voice mail messages – eight live calls originating from four different NRC employees, and thirteen recorded calls. Pawelczak heard none of the 21 messages in real time, and at no time did she answer any of the phone calls from NRC. In each of the live calls, an NRC employee left a message for Pawelczak requesting that she call that employee back at a phone number belonging to NRC. None of the eight live calls identified NRC as a debt collector or disclosed that the purpose of the phone call was to collect a debt. In two of the live calls, the NRC

representatives mentioned Applied Bank but nothing regarding a debt owed. The NRC

representatives also failed to disclose that they were calling on behalf of NRC in three

of the eight live messages, but did do so in the remaining five messages.[2]

Each of the thirteen recorded NRC calls left the following identical voice mail

message:

> Important message for Anna Pawelczak. If this is Anna Pawelczak press
> the one key on your phone now and you will be connected to the next
> available agent. Again, if this is Anna Pawelczak press one to be
> connected, otherwise disregard this call or contact us at [phone number]
> to remove this number. Thank you.

None of the recorded calls left with Pawelczak's voice mail system identified NRC as

the source of the call, identified the caller as a debt collector, or indicated that the

purpose of the calls related to collecting a debt. At the time she received these phone

calls, Pawelczak was unaware that the calls came from a debt collector, or that the calls

concerned the collection of a debt. Pawelczak has not received any written

communications from NRC.[3]

---

[2] NRC disputes the content of each of the proffered voice mail messages. It argues that the messages are based on inadmissible hearsay, and that Pawelczak has provided no evidence that the transcripts are based on authentic and original recordings. Also, with respect to the recorded calls, NRC disputes that they were left on Pawelczak's voice mail system, and instead claims that Dial Connect detected that a live person answered the calls and listened to the messages.

[3] NRC mailed Pawelczak a letter titled "First Notice New Retail" on December 13, 2010, but the parties do not dispute that she did not receive it.

*NRC's Training and FDCPA Compliance Procedures*

NRC trains all its employee-collectors to comply with the FDCPA. New hires undergo a one-week training course on NRC policies and procedures, including FDCPA compliance when communicating with debtors. The one-week course utilizes modules provided by the Association of Credit and Collections Professionalism. NRC trains its employees to (1) disclose the full name of the collector; (2) provide the full name of the company, "Nations Recovery Center;" (3) identify the caller as a "debt collector;" and (4) notify the debtor that the call "is an attempt to collect a debt." NRC refers to these disclosures as "Foti compliance." NRC provides each new employee a handbook outlining its policies and procedures.[4] However, NRC uses a copy of the FDCPA that was published in 1998 and does not incorporate the 2006 amendments to the Act. Also absent from the training materials is any discussion of how debt collectors are to deal with voice mail systems.

To begin work as an NRC debt collector, NRC requires employees to take a test on the FDCPA and score 100%. None of the test questions relate to leaving FDCPA-compliant voice mail messages to debtors. Collectors must also sign the NRC Collectors Agreement, in which they agree to follow the FDCPA and other federal laws. The Collectors Agreement authorizes NRC managers to monitor collectors' phone calls

---

[4] Pawelczak points out that NRC is unaware whether the handbook contains guidelines on Foti compliance.

- 4 -

in order to insure FDCPA compliance. NRC debt collectors are not required to read from a script when conversing with debtors or leaving a voice mail message.

NRC conducts ongoing training in the form of monthly meetings, computer screensavers, and memoranda containing additional FDCPA and Foti compliance tips. FDCPA-related memoranda are posted on bulletin boards in common areas. NRC managers monitor employees' phone calls and coach the collectors on FDCPA compliance. NRC employees who violate the FDCPA or are not in accord with Foti compliance measures may be subject to various disciplinary measures, including retraining, suspension, and termination.

In addition to utilizing its employees to collect debts, NRC also uses a telephone system known as "Dial Connect" to contact debtors. Dial Connect is designed to communicate with live persons but to disconnect the line when it encounters a voice mail system. NRC claims that Dial Connect is 98-99% successful at distinguishing between live persons and voice mail systems. It was designed to comply with industry best standards, and NRC has a procedure in place to make sure that Dial Connect software runs properly.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Protective Life*

*Ins. Co. v. Hansen*, 632 F.3d 388, 391-92 (7th Cir. 2011). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). When faced with cross-motions for summary judgment, the court views all facts, and draws all reasonable inferences in favor of the party against whom the motion under consideration is made. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

## DISCUSSION

Pawelczak asserts that NRC's voice mails violated 15 U.S.C. §§ 1692d(6) and 1692e(11). In its response, NRC argues that (1) a voice mail message does not constitute a "communication" under the FDCPA and that it is therefore not liable, or in the alternative, (2) it is entitled to a bona fide error defense under 15 U.S.C. § 1692k(c). Before ruling on each party's motion, we must resolve whether the transcripts of the voice mail messages offered by Pawelczak are admissible, and the admissibility of deposition testimony from NRC's CEO, Paul Bataillon ("Bataillon").

## I.      Evidentiary Rulings

### A.      Admissibility of Voice Mail Messages Left for Pawelczak

NRC objects to admitting the transcripts into evidence because (1) the transcripts constitute inadmissible hearsay, and (2) Pawelczak provided no evidence that the

- 6 -

transcripts were based on original and authentic recordings from NRC, and that NRC is unable to authenticate the transcripts.

Hearsay is an out of court statement offered to prove the truth of the matter asserted, and is generally inadmissible. Fed. R. Evid. 801(c), 802. However, such a statement offered against an opposing party that was made by the party's employee is not hearsay, and is admissible. Fed. R. Evid. 801(d)(2)(D); *See Germano v. Int'l Bus. Analysis, Inc.*, 544 F.3d 798, 801 (7th Cir. 2008). The content of the voice mail messages are based on calls from NRC employees and are therefore non-hearsay statements.

Nor is NRC's authenticity objection availing. That Pawelczak's testimony refers to a "transcript" does not negate her ability to competently testify as to the content of the voice mail messages based on her own recollection of receiving and listening to them. *Snyder v. Tiller*, 3:08-CV-00470 JD, 2010 U.S. Dist. LEXIS 90266, * 13 (N.D. Ind. Aug. 30, 2010); *citing Jackim v. Sam's East, Inc.*, Nos. 07-3514, 08-4701, 2010 U.S. App. LEXIS 10702, * 26-27 (6th Cir. May 25, 2010) ("[Declarant's] knowledge of the day did not come from the video, but his own senses and memory. The fact that a video recording may at times be in fact the 'best' evidence of what occurred does not render first-hand testimony of the event incompetent."). Because the NRC statements

are non-hearsay and Pawelczak is competent to testify as to the content of the voice mail messages, Pawelczak's recollection of the content of messages are admissible.

**B.    Admissibility of Bataillon's Testimony**

Pawelczak argues that Bataillon's statement that the Dial Connect system is 98-99% effective at detecting a voice mail system rather than a live person is inadmissible hearsay. Dial Connect is designed to disconnect a call if a live person does not answer the phone. When asked if he was aware of Dial Connect's error rate or if any statistics existed that could back up its purported success rate, Bataillon responded, "I believe there are some statistics. If memory serves me, I was told, but this has been a while ago, it was 98, 99 percent effective. But I am not positive on this point. It's been a little while."

NRC seeks to introduce this testimony, and only this testimony, to support its claim that the Dial Connect system is 98-99% effective, and that therefore Pawelczak, contrary to her sworn declaration, must have answered the phone call. Bataillon's statement is based on unidentified statistics that he had obtained from an unknown source at some unidentified time in the past. Bataillon's assertion is based on speculation, and does not provide the necessary factual support for NRC's claim that the Dial Connect system is as successful as it claims it to be. We therefore accord

- 8 -

Bataillon's statement, and the conclusion that the Dial Connect system is 98-99% successful at distinguishing between a live and automated voice, no weight.

## II.     Pawelczak's Motion for Summary Judgment

Congress passed the FDCPA to protect consumers from certain deceptive and abusive debt collection practices. 15 U.S.C. § 1692(e); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 643-44 (7th Cir. 2009). The Act prohibits debt collectors from harassing, oppressing or abusing any debtor; using false, deceptive or misleading statements in connection with the collection of a debt; and employing unfair or unconscionable means to collect a debt. 15 U.S.C. §§ 1692d, 1692e, 1692f.

Claims against debt collectors under the FDCPA are evaluated from the perspective of an "unsophisticated consumer" – a "consumer who is uninformed, naive, or trusting . . . ." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). Moreover, "the FDCPA is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'Ships*, 577 F.3d 790, 805-06 (7th Cir. 2009).

Pawelczak claims that NRC failed to make necessary disclosures in its voice mail messages under 15 U.S.C. §§ 1692d(6) and 1692e(11).

### A.     15 U.S.C. § 1692e(11)

Consistent with the FDCPA's purpose of protecting consumers from debt collection abuses, 15 U.S.C. § 1692e broadly prohibits the use of "any false, deceptive,

or misleading representation[s] or means in connection with the collection of any debt."

*O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011).

Section 1692e(11) was designed to provide information to consumers that would enable

them to make intelligent choices, *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th

Cir. 2009), and to protect consumers from abusive debt collection practices. *O'Rourke*,

635 F.2d at 941 n.2.

Pawelczak claims that NRC failed to make certain disclosures, known as the

"mini-miranda notice," required under § 1692e(11). The statute provides that:

> A debt collector may not use any false, deceptive, or
> misleading representation or means in connection with the
> collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a
> violation of this section:
> * * *
>
> (11) The failure to disclose in the initial . . . oral
> communication [with the consumer], that the debt collector
> is attempting to collect a debt and that any information
> obtained will be used for that purpose, and the failure to
> disclose in subsequent communications, that the
> communication is from a debt collector . . . .

15 U.S.C. § 1692e(11). Pawelczak contends that NRC, through its employees, violated

Section 1692e(11) by failing to disclose in its initial voice mail message that it was

attempting to collect a debt, and failing to identify itself as a debt collector in

subsequent communications with her.

There is no dispute that for FDCPA purposes, Pawelczak was a "consumer,"[5] that her financial obligation constituted a "debt,"[6] and that NRC was a "debt collector."[7] Pawelczak has offered uncontested testimony that in NRC's initial December 11th, 2010 voice mail message, its employee did not disclose that he or she was calling to collect a debt, nor that he or she would use any information to collect that debt. There is no disagreement that NRC, through its employees, failed to identify itself as a debt collector in each of its subsequent voice mail messages to Pawelczak. NRC only argues that a voice mail message is not a "communication" under the FDCPA.

The Act defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2). Here, each of the live and recorded voice messages left a callback number, several of the live voice messages requested that Pawelczak call back to discuss the "matter," and that it was "important" that Pawelczak call back "soon," or "today." These messages at least

---

[5] A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[6] A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5).

[7] A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . ." *Id.* § 1692a(6).

indirectly convey information regarding a debt – namely, calling Pawelczak's attention to a matter of importance, and leaving a phone number that Pawelczak should call to further discuss the matter. There is no dispute that Pawelczak is "any person" under the Act, or that contacting her by telephone constitutes "through any medium." We therefore hold that the voice mail messages are "communications" under the § 1692a(2). Other courts in this district have reached the same conclusion on this issue. *See e.g. Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008) (finding that voice mail messages left for a debtor were "in the very least, an indirect communication regarding the Plaintiff's debt," where the messages stated that "there was a matter that [the Plaintiff] should attend to and instructions on how to do so."), *citing Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005); *Smith v. Greystone Alliance LLC*, No. 09 C 5585, 2011 U.S. Dist. LEXIS 35283, *18-21 (N.D. Ill. March 29, 2011) (holding that debt collector's failure to identify itself as a debt collector in recorded voice mails after identifying itself as such in its initial communication was nevertheless misleading, and therefore in violation of 15 U.S.C. § 1692e(11)), *vacated on other grounds*, 2011 U.S. Dist. LEXIS 58777 (N.D. Ill. May 27, 2011).

NRC argues that making the necessary disclosures under Section 1692e(11) on a voice mail message exposes itself to liability under 15 U.S.C. § 1692c(b), which

prohibits debt collectors from disclosing information about a debt to a third party. That argument is unavailing for two reasons. First, NRC presents no argument that a debtor's voice mail service should be construed as a "third party" under the Act. Furthermore, NRC's argument that they should not be penalized for seeking to protect Pawelczak's privacy is severely undermined by its own internal memorandum dated January 28, 2011, which indicated that NRC had some procedures in place for employees to leave FDCPA-compliant voice mail messages. In any event, if NRC was actually uncertain as to what constituted an FDCPA-compliant voice mail, refraining from leaving a message at all would ensure compliance with the Act. As NRC has failed to provide any evidence to the contrary, we find that NRC's voice mail messages did not comply with Section 1692e(11) as a matter of law.

### B. 15 U.S.C. § 1692d(6)

Section 1692d of the FDCPA prohibits debt collectors from harassing, oppressing, or abusing any person in connection with the collection of a debt. 15 U.S.C. § 1692d. To that end, Section 1692d(6) requires that a debt collector provide "meaningful disclosure" of its identity when placing a telephone call. *Id.* § 1692d(6). Though the statute does not define "meaningful disclosure," it is well established that the statute requires debt collectors' employees to disclose (1) the name of the debt

collection company, and (2) that the purpose of the phone call is to collect a debt.[8]

*Hutton v. C.B. Accounts, Inc.*, No. 10-3052 2010 U.S. Dist. LEXIS 77881, * 8 (N.D. Ill.

Aug. 3, 2010); *accord Gryzbowski v. I.C. Sys.*, 691 F. Supp. 2d 618, 625 (M.D. Pa.

2010); *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943, 946 (D. Minn. 2007);

*Hosseinzadeh*, 387 F. Supp. 2d at 1112; *Wright v. Credit Bureau of Georgia, Inc.*, 548

F. Supp. 591, 597 (N.D. Ga. 1982).

There is no genuine dispute that in three of the live voice messages and all of the

recorded messages left for Pawelczak, NRC employees failed to disclose NRC's

identity. Furthermore, none of NRC's live or recorded voice mail messages stated that

the purpose of the phone call was to collect a debt. These facts sufficiently establish

that NRC failed to provide Pawelczak "meaningful disclosure" of its identity, and that

it therefore violated § 1692d(6) as a matter of law.

## III.    NRC's Affirmative Defense

Although Pawelczak has established that NRC violated 15 U.S.C. §§ 1692d(6)

and 1692e(11), NRC asserts that it is entitled to a "bona fide error" defense under 15

U.S.C. § 1692k(c). The statute provides that a "debt collector may not be held liable

in any action brought under [the FDCPA] if the debt collector shows by a

preponderance of evidence that the violation was not intentional and resulted from a

---

[8] Section 1692d(6) imposes requirements upon debt collectors similar to § 1692e(11), and the analyses there overlap considerably.

bona fide error notwithstanding the maintenance of procedures reasonable adapted to avoid any such error." 15 U.S.C. § 1692k(c).

A "bona fide error" is one genuinely made in good faith, *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005), but applies only to mistakes of fact, not of law. *Jerman v. Carlisle, McNellie, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1624 (2010). It is an affirmative defense that the debt collector has the burden of proving. *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1514 (9th Cir. 1994). Thus, NRC will not be held liable if it can show that its violations (1) were unintentional; (2) resulted from bona fide errors; and (3) occurred despite its maintenance of procedures that were reasonably adapted to avoid such errors. *Ruth*, 577 F.3d at 803.

We need not address whether NRC can satisfy the first two elements of the defense, because we find that NRC's procedures were not reasonably adapted to avoid the leaving voice mail messages that violated the Act. NRC argues that any FDCPA violations it committed occurred despite its maintenance of procedures – ongoing FDCPA training and testing – which were reasonably adapted to preventing the violating the Act. To determine if a defendant has implemented procedures reasonably adapted to avoid FDCPA violations, we consider (1) if the debt collector actually employed or implemented procedures to avoid errors, and (2) if those procedures 'reasonably adapted' to avoid the specific errors at issue. *Seger v. AFNI, Inc.*, Case No.

05-C-714, 2007 U.S. Dist. LEXIS 40304, *63 (N.D. Ill. June 1, 2007), (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)), *aff'd*, 548 F.3d 1107 (7th Cir. 2008).

NRC points out that a memorandum dated January 28, 2011 was distributed to its debt collectors, and argues that the memorandum demonstrates its commitment to comply with the Act. The memorandum states that "**The mini Miranda must be used during all conversations with debtors.** That not only includes voice messages, but every conversation as well." (Emphasis in original). Various employees also testified that FDCPA compliance with respect to voice messages were covered in monthly meetings. NRC enforces its compliance measures with ongoing training, monitoring its employees' phone calls, and disciplinary actions against employees whose conduct violates the Act. This, NRC argues, sufficiently demonstrates that it maintained procedures that were reasonably adapted to avoid leaving non-FDCPA compliant voice messages on Pawelczak's voice mail system.

On the other hand, NRC's training materials included an outdated version of the FDCPA that predated the 2006 amendments to the Act. A ten-page worksheet that NRC used to train its debt collectors was published in 1998, and makes no mention of procedures relating to leaving FDCPA-compliant voice messages. Moreover, an exam that NRC administered to assess its employees' ability to comply with the FDCPA contained no questions relating to leaving voice mail messages to debtors. Furthermore, Pawelczak received a live voice mail message on February 23, 2011, less than one

month after the January 28th memorandum.  This leaves us with the distinct impression that either the memorandum's message fell on deaf ears, or that the measures were not sufficiently implemented.  While various NRC employees testified that they received training regarding FDCPA-compliant voice messages, the testimony did not elucidate how strictly NRC enforced its calls for FDCPA compliance with respect to leaving voice mail messages.  One NRC employee testified that upon receiving memoranda like the one distributed on January 28th, he "read[s] it and ball[s] it up."  Another employee could not recall if NRC's employee manual contained any instructions on how to leave FDCPA-compliant voice mail messages.  Critically, none of the eight live voice mail messages left for Pawelczak complied with the FDCPA.  These eight messages were left by four different individual employees, indicating that the compliance failures were not merely the result of a single "rogue" NRC employee.

When weighing this evidence, we cannot conclude that as a matter of law NRC's procedures were reasonably adapted to prevent the FDCPA violations of which Pawelczak now complains.  Nor do we find that a triable issue of fact exists, as any claim that NRC's procedures were reasonably adapted to prevent its employees from leaving non-FDCPA compliant voice mail messages is foreclosed by the fact that Pawelczak received eight illegal calls from four different NRC employees in little over two months.

We also find that NRC's procedures with respect to the Dial Connect system were not reasonably adapted to avoid FDCPA violations. NRC's contention is based on the premise that the Dial Connect system is 98-99% effective at distinguishing live from automated responses. For the reasons discussed above, NRC has provided no admissible evidence to substantiate its defense. In any event, Pawelczak received thirteen recorded voice messages in just over three months, suggesting that the Dial Connect system is not nearly as effective as NRC claims. While we are aware that the maintenance of reasonably adapted procedures "does not require debt collectors to take every conceivable precaution to avoid errors . . . it only requires reasonable precaution," *Kort*, 394 F.3d at 539, NRC presents no evidence for this Court to conclude that the Dial Connect system meets that threshold. As NRC has failed to provide sufficient evidence to create a triable issue of material fact, Pawelczak's motion for summary judgment is granted. Accordingly, NRC's motion for summary judgment is denied.

## CONCLUSION

For the reasons above, NRC's motion for summary judgment is denied, and Pawelczak's cross-motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated:   June 14, 2012

- 18 -